# In the United States Court of Federal Claims

No. 10-664 C
(Filed: March 29, 2012)

| | |
|---|---|
| ************************************* | Cross-Motions for Judgment Upon the |
| WARREN S. PETERSON, III,   * | Administrative Record, RCFC 52.1; |
|   * | Conversion of Motion to Dismiss, RCFC |
|       Plaintiff,   * | 12(d); Military Pay Act, 37 U.S.C. § 204; |
|   * | Presumption of Voluntary Separation; |
| v.   * | Constructive Service Doctrine Does Not |
|   * | Apply; Disability Rating; "Benefit of the |
| THE UNITED STATES,   * | Doubt" Doctrine; <u>Gilbert</u>; 10 U.S.C. § 1222; |
|   * | Full and Fair Hearing, 10 U.S.C. § 1214; |
|       Defendant.   * | Decision Based Upon Substantial Evidence |
| ************************************* | |

<u>Jason E. Perry</u>, Cheshire, CT, for plaintiff.

<u>Renee A. Gerber</u>, United States Department of Justice, Washington, DC, for defendant.  Maj. Imedla Paredes and Capt. Joseph A. Smiga, of counsel.

**OPINION AND ORDER**

**SWEENEY**, Judge

Plaintiff sustained injuries while serving on active duty in the Arizona Air National Guard.  He brings this suit alleging that the United States Air Force ("Air Force") assigned him an erroneous disability rating, wrongfully discharged him from service, and denied him back pay. The parties filed cross-motions for judgment upon the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") related to Count II of the complaint.  Thereafter, defendant filed a motion for partial dismissal pursuant to RCFC 12(b)(6) with respect to Count I of the complaint.  For the reasons set forth below, defendant's motion for partial dismissal, which the court treats as a motion for judgment upon the administrative record, is granted; defendant's motion for judgment upon the administrative record is granted; and plaintiff's cross-motion for judgment upon the administrative record is denied.

## I. BACKGROUND

Plaintiff enlisted in the Arizona Air National Guard and eventually attained the rank of master sergeant.[1]  AR 108.  On September 19, 2007, plaintiff was involved in a motorcycle accident while in the line of duty, id. at 97-98; cf. id. at 90 (stating that the accident occurred on September 23, 2007), and suffered "severe injur[ies] to his back," id. at 90.  The Air Force provided plaintiff with medical care, which included surgery and physical therapy.  Id.

During the course of physical therapy, plaintiff was evaluated to measure his thoracolumbar active range of motion in flexion ("ROM"), viz., the angle at which an individual can bend forward from a standing position.  See id. at 73.  During his first evaluation in February 2008, plaintiff's ROM measurements averaged fifty degrees.  Id. at 24, 28.  The same average was measured during plaintiff's April 2008 evaluation.  Id. at 24.  In July 2008, plaintiff's ROM measurements averaged eighty degrees, id., and he rated his functionality at sixty percent, id. at 90.  At plaintiff's next evaluation in January 2009, his ROM measurements averaged thirty-seven degrees.  Id. at 47, 67.  During the January 2009 evaluation, plaintiff complained that he was in "constant pain" and rated his functionality at forty-five percent.[2]  Id. at 67.

On February 4, 2009, Captain Lori L. Hardacker, a family medicine physician assistant, prepared an MEB narrative summary.  Id. at 90.  According to Captain Hardacker, plaintiff received permission to work half-days and "was placed on physical limitations as well, which . . . persisted despite rehabilitation."  Id.  As a result, plaintiff was "limited from prolonged standing and sitting," rendering him "non-deployable."  Id.  Captain Hardacker also reported that plaintiff's last physical therapy session occurred in July 2008 and he stopped physical therapy without any discharge instruction.  Id.  But see id. at 86 (stating that plaintiff "stopped coming to physical therapy when Cindy Gold at Davis Monthan Physical Therapy instructed [him] to stop coming in.  She told [him] that [he] had learned all of the exercises and that at the time there was nothing else for [him] to learn").  Captain Hardacker made the following recommendation:

> [Plaintiff] is a member of the Air National Guard and has been maintained on orders for his entire recovery.  Due to the persistence of his inability to return to full-functionality, despite Physical Therapy, he will need to meet a medical board.  [Plaintiff] is still unable to lift greater than 15 pounds per his last report and [is] still having difficulty participating in a physical fitness program.  [Plaintiff] has not completed a physical fitness assessment in the past year.

---

[1]  The facts are derived from the administrative record ("AR").  See Walls v. United States, 582 F.3d 1358, 1368 (Fed. Cir. 2009) (indicating that "review of a military corrections board is limited to the administrative record").

[2]  It appears that the January 2009 evaluation was conducted as part of the Medical Evaluation Board ("MEB") process.  AR 67.

Id. at 92.  Two days after Captain Hardacker prepared her MEB narrative summary, Captain Paul W. Jefferson, commander of the 162nd Force Support Squadron, recommended that plaintiff be medically retired because "the severity of [plaintiff's] injuries . . . imposed physical restrictions that [we]re not compatible with the Air National Guard . . . construct."  Id. at 83.

On March 3, 2009, an MEB convened to consider plaintiff's continued active duty.  Id. at 80.  The MEB diagnosed plaintiff as suffering from "chronic low back pain, status post spinal fusion," while in the line of duty.  Id.  It recommended that plaintiff's case be referred to a Physical Evaluation Board ("PEB").  Id.

An Informal Physical Evaluation Board ("IPEB") convened but suspended proceedings on May 20, 2009, in order to obtain additional documentation concerning plaintiff's condition. Id. at 72.  Specifically, the IPEB requested an addendum to Captain Hardacker's February 4, 2009 MEB narrative summary and "an examination of [plaintiff's] back and lower extremities to include ROM and prognosis."  Id.  On May 21, 2009, Captain Hardacker furnished an addendum to her previous MEB narrative summary:

> [Plaintiff] has completed a full course of Physical Therapy after his surgery and [was] released from [its] care.  Per [plaintiff], he is no longer able to perform his job due to the physical demands required of Security Forces personnel.  He cannot run at all without pain and has been restricted from running by his Neurosurgeon. [Plaintiff] is over one year out from surgery and it is felt that his current limitations will not change in the near future.  [Plaintiff] is not motivated to perform another course of Physical Therapy.

Id. at 69.  Per the IPEB's request, plaintiff was examined on May 27, 2009.  Id. at 49-52.  During this examination, plaintiff reported that he was in "constant pain" and rated his functionality at forty percent.  Id. at 49.  His ROM measurements averaged twenty degrees.  Id. at 47, 51.

On June 3, 2009, the IPEB, after receiving Captain Hardacker's addendum and plaintiff's May 2009 ROM measurements, issued its findings and recommendations.  Id. at 62.  The IPEB diagnosed plaintiff as suffering from "[c]hronic low back pain, status-post laminectomy and fusion of L1-3 and T12-L4" incurred while in the line of duty.  Id.  Plaintiff's medical condition, the IPEB determined, "prevent[ed him] from reasonably performing the duties of [his] office, grade, rank, or rating" and rendered him "unfit."  Id.  Consequently, the IPEB recommended that plaintiff be discharged with severance pay based upon a disability rating of twenty percent, rather than be retired.[3]  Id.

---

[3]  A twenty percent rating is assigned to service members with a ROM measurement that is greater than thirty degrees but less than sixty degrees.  38 C.F.R. § 4.71a (2009).  Retirement is appropriate when a disability rating is at least thirty percent.  10 U.S.C. § 1201(b)(3)(B) (2006).

Plaintiff disagreed with the IPEB's findings and recommendations, and requested a formal hearing. Id. at 59. A Formal Physical Evaluation Board ("FPEB") issued its findings and recommendations on August 13, 2009. Id. at 46-47. The FPEB indicated that plaintiff's neurological exam was negative and evidenced strength in his lower extremities. Id. at 47. It noted that plaintiff was unable to run and was advised to continue mobility and physical restrictions (including lifting no greater than ten pounds, standing in formation for no more than ten minutes, etc.). Id. The FPEB also cited plaintiff's testimony that he "occasionally experience[d] acute spasms and some radicular symptoms," "self-limit[ed]," and found "work-a-rounds (such as squatting instead of bending to accomplish tasks)" in order to accommodate his injuries. Id. The FPEB concluded that plaintiff was "unfit for military service." Id.

The FPEB rejected plaintiff's argument that he was entitled to a disability rating of forty percent based upon his May 2009 ROM measurements. Id. First, the FPEB observed that, "[d]uring the formal hearing, it was apparent . . . that [plaintiff's ROM] exceeded 30 degrees as he performed the sitting/standing movements inherent in board proceedings." Id. Second, the FPEB reviewed Captain Hardacker's MEB narrative summary and addendum, as well as clinical notes, and noted that plaintiff's ROM measurements ranged from thirty-seven to eighty degrees during four previous examinations. Id. Third, the FPEB cited plaintiff's testimony that he "self-limit[ed] his activities to avoid aggravating his pain and stopped his forward flexion[] during [the] most recent [ROM] examination (May 09) when he started to feel pain." Id. Fourth, the FPEB noted plaintiff's testimony that there was "no significant change in his spinal condition or acute injury in the past year." Id. As a result, the FPEB concluded that plaintiff's "'disability picture' due to his back condition [wa]s best approximated by the 20% rating" based upon medical evidence, observation, plaintiff's own testimony, and the Veterans Administration Schedule for Rating Disabilities ("VASRD"). Id. The FPEB then recommended that plaintiff be discharged with severance pay with a compensable disability rating of twenty percent. Id.

Plaintiff disagreed with the findings and recommendations of the FPEB and requested that his case be transferred to the Secretary of the Air Force Personnel Council ("SAFPC") for review and final decision. Id. at 45. On August 30, 2009, plaintiff submitted a rebuttal to the FPEB's findings. Id. at 26-34. The FPEB, plaintiff asserted, improperly rejected evidence, namely his May 2009 ROM measurements that he believed justified a disability rating of forty percent. Id. Plaintiff also argued that the FPEB improperly relied upon his January 2009 ROM measurements because he believed Air Force regulations prohibited consideration of evidence that was older than ninety days. Id. at 28. Furthermore, plaintiff alleged that the FPEB improperly conducted an in-hearing medical examination when it observed his ability to participate in the board's proceedings. Id. at 28-29. Citing 10 U.S.C. § 1222, plaintiff requested detailed findings and presented six questions to which he sought answers. Id. at 33-34.

The SAFPC reviewed the testimony before and recommendations of the FPEB, the recommendations of the IPEB, plaintiff's service medical record, and Captain Hardacker's MEB narrative summary and addendum. Id. at 20. On November 17, 2009, the SAFPC issued a decision concurring with the FPEB and IPEB recommendations, and directing that plaintiff be

discharged with severance pay based upon a disability rating of twenty percent.  Id.  The SAFPC noted that plaintiff occasionally experienced spasms and pain in his back and buttocks, but it determined that "the record d[id] not indicate any incapacitating episodes."  Id.  Citing plaintiff's testimony that he could lift up to seventy pounds using proper technique and had a "significantly reduced need for pain medication," the SAFPC concluded that plaintiff had a level of functionality "above that being contended for."  Id.  It reasoned that a "record of multiple measurements over the year after his fusion procedure, ranging from 20 degrees to 80 degrees of [ROM] (50, 50, 80, 36, and 20 degrees) with no intervening structural changes" was "indicative of a broader effect of daily variation potentially due to the intermittent spasm and varied pain that [wa]s common to this condition and noted by [plaintiff]."  Id. at 20-21.

The SAFPC also rejected plaintiff's contention that his May 2009 ROM measurements were "the only one[s] that should be considered," explaining that plaintiff's argument was "contrary to the board's function, as well as to the value and intent of the inclusion in this process of [plaintiff's] opportunity to appear before a formal board, whose purpose is to evaluate the member's entire disability picture."  Id. at 21.  The SAFPC, explaining that plaintiff's January 2009 ROM measurements complied with Air Force regulations and were not older than ninety days when they were received by the PEBs, emphasized that no statute of limitations precluded consideration of data "as long as [the data] contribute[d] to the fair and complete evaluation of the member's case."  Id. (citation omitted).

Finally, the SAFPC rejected plaintiff's claim that he was subjected to an improper medical examination during the FPEB hearing:

> While it is agreed that the physician or other members' observations during the formal board should not be the sole basis for a decision or countering an expert opinion, those observations should not be completely disallowed or ignored, either.  It is one element of the board process and its decision, but has no appearance of being the sole determinant, nor is it contrary to the preponderance of the evidence available in the record.

Id.  The SAFPC noted that, had the PEBs relied solely upon plaintiff's July 2008 ROM measurements that averaged eighty degrees, plaintiff would have been assigned a disability rating of only ten percent.  Id.  This was "clearly not the case," the SAFPC explained, as both the IPEB and FPEB "us[ed] the most common collection of values over a period that [plaintiff's] condition was by all accounts stable[ and] . . . showed good judgment in assigning a moderate disability rating.  The purpose of these boards is to evaluate the entire disability picture, and that has been accomplished in this case."  Id.  The SAFPC advised plaintiff of his right to appeal its decision to the Air Force Board for Correction of Military Records ("AFBCMR").  Id.  Plaintiff does not allege–and the record does not indicate–that he appealed the SAFPC's decision to the AFBCMR.

On December 2, 2009, plaintiff elected transfer to the Inactive Status List Reserve Section ("ISLRS") in order to apply for early retirement, id. at 18; see id. at 13 ("Since the

member has over 15 years of satisfactory service . . . , member has exercised the option to request transfer to the inactive status list reserve section[] in lieu of being discharged with severance pay . . . ."). Plaintiff was scheduled to be discharged on March 29, 2010. Id. at 15. On January 4, 2010, Captain Jefferson, noting that plaintiff would attain twenty years of service on April 20, 2010, requested that plaintiff's discharge date be modified to April 21, 2010. Id. at 12; see also id. (explaining that plaintiff "initially signed for the early retirement because he was expected to be retired much sooner than the established date, however, since he is so close to his 20 year point, he would really like to attain that goal of 20 [years] . . . and retire").

While Captain Jefferson's request was pending, plaintiff, on January 6, 2010, received a memorandum advising him that

> [o]fficials within the Office of the Secretary of the Air Force have determined that you are physically unfit for continued military service and directed that you be discharged from the service with entitlement to severance pay . . . . However, since you have at least 20 years of satisfactory service, you may elect transfer to the . . . []ISLRS[] for the purpose of applying for retirement . . . in lieu of being discharged with severance pay. If you elect this option, it is your responsibility to submit the appropriate application.[4]

Id. at 6 (footnote added). Plaintiff was asked to complete a new ISLRS election option. Id. at 11. On January 13, 2010, plaintiff again elected transfer to the ISLRS for the purpose of applying for retirement. Id. at 5. On January 20, 2010, plaintiff received permission to "reenlist . . . for less than three years to allow him to reach 20 years satisfactory service." Id. at 10; see also id. at 9 ("An Exception to Policy to reenlist [plaintiff] for less than 3 years has been reviewed and is approved until 21 April 2010 . . . ."). Plaintiff's retirement ultimately became effective on April 21, 2010. Id. at 2.

Shortly thereafter, plaintiff filed a two-count complaint in the United States Court of Federal Claims ("Court of Federal Claims"). In Count I, plaintiff alleges that the Air Force violated the Military Pay Act, 37 U.S.C. § 204 (2006), by wrongfully denying him active duty pay. Plaintiff also claims that his separation was "improper" because he did not receive a full and fair hearing. In Count II, plaintiff alleges that the Air Force failed to properly rate his disability in violation of 10 U.S.C. § 1201 and Air Force regulations, improperly subjected him to an in-hearing medical examination, violated 10 U.S.C. § 1222 by failing to address issues he raised, and deprived him of a full and fair hearing. Plaintiff seeks back pay and allowances, out-of-pocket expenses for medical care incurred since his removal from active duty, and costs and attorney fees. Plaintiff also requests restoration to active duty until such time as his physical disability case is decided by the Secretary of the Air Force or the court. Alternatively, plaintiff seeks an order directing retirement with a disability rating of forty percent or higher.

---

[4] The information set forth in the memorandum was contingent upon approval of Captain Jefferson's request for an extension of plaintiff's discharge date. AR 6.

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

The Tucker Act confers upon the Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006).  However, the Tucker Act "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976).  Therefore, "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion).  Both the Military Pay Act and 10 U.S.C. § 1201 are money-mandating statutes. See McHenry v. United States, 367 F.3d 1370, 1376 (Fed. Cir. 2004); James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1998).  Accordingly, the court possesses jurisdiction over the complaint.

### B.  Conversion of Motions in Accordance With RCFC 12(d)

Defendant filed a motion for partial dismissal pursuant to RCFC 12(b)(6) with respect to Count I of the complaint.  Generally, courts consider "only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record" when deciding an RCFC 12(b)(6) motion. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56." RCFC 12(d).  Defendant's motion for partial dismissal references and relies upon portions of the administrative record, which is considered a matter outside the pleadings. See Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1228 (D.C. Cir. 1993).  The matters cited by defendant were not incorporated by reference in the pleadings.  As a result, the court, which reviews the SAFPC's action under the same standard as it reviews the actions of any other agency, Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006), treats the motion for partial dismissal as one for judgment upon the administrative record under RCFC 52.1.[5] See Dawson v. United States, 75 Fed. Cl. 53, 54 (2007) (treating a request to review an agency's decision under RCFC 12(b)(6) motion as one for judgment upon the administrative record); cf. Williams v. United States, 100 Fed. Cl. 263, 271, 273 n.14 (2011) (treating an RCFC 12(b)(6) motion to dismiss as one for summary judgment because the parties presented materials outside the

---

[5]  Pursuant to RCFC 12(d), the court informed the parties of its intention to convert defendant's motion for partial dismissal and afforded them an opportunity to submit supplemental briefs. See Order, Feb. 14, 2012.  In their joint status report, the parties indicated that supplemental briefing with respect to Count I was unnecessary.  Joint Status Report, Feb. 28, 2012.

pleadings, including the administrative record, but relying upon the administrative record solely for the purpose of determining the justiciability of certain claims); Weide v. United States, 4 Cl. Ct. 432, 434-35 (1984) (merging a motion to dismiss under a predecessor rule to RCFC 12(b)(6) into one for summary judgment because the defendant submitted a certified administrative record consisting of the plaintiff's official military personnel file and related file from the Army Board of Correction of Military Records).

Although RCFC 12(d) requires the court to treat an RCFC 12(b)(6) motion as one for summary judgment, "[s]ummary judgment standards are not pertinent to judicial review upon an administrative record."  RCFC 52.1, rules committee note (2006) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1355-57 (Fed. Cir. 2005)[6]).  As the rules committee note recognized, where a portion of a case turns on action taken by an administrative agency,

> the administrative record may provide a factual and procedural predicate for a portion of the court's decision, while other elements might be derived from a trial, an evidentiary hearing, or summary judgment or other judicial proceedings. [RCFC 52.1] applies whether the court's decision is derived in whole or in part from the agency action reflected in the administrative record.

Id.  In this case, the court's decision with respect to Count I is derived, as explained in Part III.A, infra, from undisputed documentary evidence in the administrative record and from the agency action reflected therein.  Therefore, treatment of defendant's motion for partial dismissal as one for judgment upon the administrative record pursuant to RCFC 52.1, as opposed to summary judgment, is appropriate.

### C. Motions for Judgment Upon the Administrative Record

When ruling upon an RCFC 52.1 motion for judgment upon the administrative record, the court must decide "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006) (citing Bannum, Inc., 404 F.3d at 1356).  Unlike within the summary judgment context, the existence of genuine issues of material fact neither precludes the court from granting judgment upon the administrative record nor requires it to conduct evidentiary proceedings.  Johnson v. United States, 93 Fed. Cl. 666, 672 (2010).  When ruling on a motion for judgment upon the administrative record, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record."  Bannum, Inc., 404 F.3d at 1357; see also id. at 1356 ("[J]udgment on the administrative record is properly understood as intending to provide for an expedited trial on the administrative record.").

---

[6]  The decision in Bannum, Inc. was based upon RCFC 56.1, which was abrogated and replaced by RCFC 52.1.  RCFC 52.1, however, was designed to incorporate the decision in Bannum, Inc.  See RCFC 52.1, rules committee note (2006).

The court's review is limited to determining whether final agency action was "arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Fisher, 402 F.3d at 1180 (panel portion); accord Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998) ("When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law."). The Court of Federal Claims does not sit as "a super correction board," Skinner v. United States, 594 F.2d 824, 830 (Ct. Cl. 1979), and it defers to administrative decisions regarding a service member's fitness for duty, see Fisher, 402 F.3d at 1176-77 (panel portion) ("When the question is one of physical or mental fitness for service in the military, courts are loath to interfere with decisions made by the President and his designated agents."); Doe v. United States, 132 F.3d 1430, 1434 (Fed. Cir. 1997) ("When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference."); Heisig v. United States, 718 F.2d 1153, 1156 (Fed. Cir. 1983) ("It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." (footnote omitted)). Although military personnel "do not leave constitutional safeguards and judicial protection behind when they enter the military service," Weiss v. United States, 510 U.S. 163, 194 (1994) (Ginsburg, J., concurring), they must "overcome the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith," Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl. 1979) (en banc), superseded in part by statute, 10 U.S.C. § 628 (2000 & Supp. I 2002), as recognized in Richey v. United States, 322 F.3d 1317, 1323-24 (Fed. Cir. 2003).

## III. DISCUSSION

### A. Defendant Is Entitled to Judgment Upon the Administrative Record With Respect to Count I

In the first of two arguments advanced by plaintiff in Count I of his complaint, he contends that the Air Force wrongfully denied him active duty basic pay, to which he claims entitlement under 37 U.S.C. § 204. Compl. ¶ 23. Section 204 "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). It confers upon a service member "the right to the pay of the rank he was appointed to up until he is properly separated from the service." Sanders, 594 F.2d at 810. In order to maintain a claim for back pay under section 204, a plaintiff's separation from the military must have been involuntary. See Metz, 466 F.3d at 998 (concluding that a plaintiff no longer on active duty "must assert and ultimately establish that his separation was involuntary in order to fit within the scope of, and take advantage of, the money mandating status of § 204, or else his claim falls for failure to state a claim upon which relief can be granted"). When a service member's separation from the military is voluntary, "the Military Pay Act does not impose on the government any continuing

obligation to pay the service member." <u>Smith v. Sec'y of the Army</u>, 384 F.3d 1288, 1295 (Fed. Cir. 2004).

It is well-established that the court must presume that plaintiff's separation was voluntary. <u>See</u> <u>Carmichael v. United States</u>, 298 F.3d 1367, 1372 (Fed. Cir. 2002) ("A presumption of voluntariness generally exists where an employee tenders his resignation or retires . . . . This presumption of voluntariness logically should extend to a military service member's honorable discharge upon the expiration of the terms of his enlistment . . . ."). Additionally, a "voluntary decision to retire . . . is not rendered involuntary simply because the service member faced a difficult situation in which his choice was limited to one of two unpleasant alternatives." <u>Murphy v. United States</u>, 69 Fed. Cl. 593, 605 (2006) (citing <u>Schultz v. U.S. Navy</u>, 810 F.2d 1133, 1136-37 (Fed. Cir. 1987)); <u>see also</u> <u>Sammt v. United States</u>, 780 F.2d 31, 33 (Fed. Cir. 1985) (noting that "a choice of unpleasant alternatives does not make a choice involuntary"). In order to rebut the presumption of voluntary separation, a plaintiff must come forward with evidence demonstrating that "(1) he involuntarily accepted the terms of the government; (2) circumstances permitted no other alternative; and (3) said circumstances were the result of the government's coercive acts." <u>Carmichael</u>, 293 F.3d at 1372 (citing <u>Christie v. United States</u>, 518 F.2d 584, 587 (Ct. Cl. 1975)).

Plaintiff asserts that his separation from the Air Force was "improper[]," Compl. ¶ 19, and argues that it was involuntary, Pl.'s Resp. Def.'s Mot. Partial Dismissal ("Pl.'s Resp.") 3-10. Nevertheless, plaintiff makes no showing to rebut the presumption of voluntary separation. First, plaintiff "chose[] to retire," AR 12, in lieu of separation with severance pay on two separate occasions. His first election occurred on December 2, 2009, <u>id.</u> at 18, after the SAFPC determined he was no longer medically fit for duty, <u>id.</u> at 20-22. His second election occurred on January 13, 2010, <u>id.</u> at 5, after a proposed modification to his discharge date, <u>id.</u> at 2. In both instances, plaintiff requested transfer to the ISLRS. <u>See id.</u> at 2, 5 (indicating that plaintiff, on January 13, 2010, "elect[ed] transfer" to the ISLRS and noting that plaintiff "exercised the option to request transfer" to the ISLRS); <u>id.</u> at 13, 18 (indicating that plaintiff, on December 2, 2009, "elect[ed] transfer" to the ISLRS and that plaintiff "exercised the option to request transfer" to the ISLRS). Furthermore, the record indicates that plaintiff discussed his discharge date with Captain Jefferson, who requested that plaintiff be permitted to attain twenty years of satisfactory service prior to his transfer to the ISLRS. <u>Id.</u> at 11-12.

At no point does plaintiff challenge the Air Force's determination that he was unfit for military duty. <u>Cf.</u> Compl. ¶ 20 ("The Air Force failed to properly rate [plaintiff] at 40% disability due to his disability . . . ."). Instead, plaintiff argues that the Air Force's determination and its offer to allow him to elect transfer to the ISLRS "show[] that [plaintiff's] separation was already determined by the Air Force and the only question was under which pay regime he was to be compensated." Pl.'s Resp. 8. According to plaintiff, the Air Force's determination "did not impact the voluntariness of his discharge" because the Air Force already directed that plaintiff be separated from active duty. <u>Id.</u> The record, however, indicates that plaintiff had a choice between transferring to the ISLRS for purposes of applying for retirement and seeking discharge

with severance pay.  Although plaintiff may have "faced a difficult situation in which his choice was limited to one of two unpleasant alternatives," Murphy, 69 Fed. Cl. at 605, plaintiff has not shown that his decision was involuntary, see Sammt, 780 F.2d at 32 ("[T]he exercise of an option to retire is not rendered involuntary by the imminent imposition of a less desirable alternative."). Moreover, plaintiff, in essence, concedes that his separation was voluntary by seeking a ruling that any separation due to disability is involuntary as a matter of law.  See Pl.'s Resp. 7.

Plaintiff's second contention in Count I of his complaint is that the Air Force's "failure to properly adjudicate" his case deprived him of a full and fair hearing under 10 U.S.C. § 1214. Compl. ¶ 19.  Section 1214 provides: "No member of the armed forced may be retired or separated for physical disability without a full and fair hearing if he demands it."  Plaintiff's section 1214 claim challenges only the assignment of his disability rating, which impacted whether he should be permanently retired or separated with severance pay.  See Compl. ¶¶ 16 (alleging that plaintiff objected to the FPEB's reliance on an older ROM study as "the basis for [its] rating determination," rather than a more recent ROM study), 18 (alleging that the Air Force "misstated the applicable standard to be applied to rating determinations"), 20 (asserting that the Air Force's alleged failure to assign him a forty percent disability rating denied plaintiff of his "due retirement pay").  Plaintiff does not claim he was given no choice but to request a transfer to the ISLRS.  In his complaint, plaintiff alleges that the Air Force failed to answer four specific questions he raised, all of which concerned the FPEB's determination of his disability rating. See Compl. ¶¶ 17-18; see also id. ¶¶ 17(a) (related to the FPEB's authority to conduct medical examinations at a formal hearing for the purpose of determining a disability rating), 17(b) (related to whether certain actions constitute relevant evidence for purposes of determining a ROM limitation), 17(c) (related to the scope of questioning medical findings related to a disability rating determination), 17(d) (related to what evidence is sufficient to establish a forty percent disability rating).  Yet, plaintiff does not show that the Air Force's purported failure to answer these questions constituted a violation of 10 U.S.C. § 1214 that rendered his separation involuntary.[7]

Finally, in his complaint's prayer for relief, plaintiff seeks active duty back pay until such time as his "physical disability case is finally decided by the Secretary of the Air Force."  Id. Prayer for Relief ¶ c.  In essence, plaintiff's request implicates the constructive service doctrine, under which "military personnel who were illegally or improperly separated from service are deemed to have continued in active service until their legal separation.  They are, therefore, entitled to back pay and benefits for the intervening period, i.e., retroactive to their original separation from service."  Christian v. United States, 337 F.3d 1338, 1347 (Fed. Cir. 2003) (citation omitted).  The constructive service doctrine "was designed to permit the award of back pay to a service person who had been injured by the improper termination of his service, and thereby denied the financial and other benefits he should and would have received but for the improper termination."  Id.

---

[7] The court further addresses plaintiff's claim that the Air Force deprived him of a full and fair hearing in Part III.B.5, infra.

A service member cannot invoke the constructive service doctrine if he voluntarily retired from the military.  Wright v. United States, 81 Fed. Cl. 369, 375 (2008).  Furthermore, the constructive service doctrine is inapplicable where a former service member claims that "he should have been retained on active duty merely for disability evaluation . . . ."  Barnick v. United States, 591 F.3d 1372, 1379-80 (Fed. Cir. 2010).  Because plaintiff has not made a showing that his separation was involuntary, plaintiff cannot invoke the constructive service doctrine.

Even if plaintiff could make the necessary showing that his separation was involuntary, the constructive service doctrine has no application here because plaintiff seeks a "[r]estoration to active duty," Compl. Wherefore ¶ c, for the sole purpose of contesting his disability rating, which he believes should be at least forty percent, see id. (requesting a permanent retirement disability rating of forty percent or higher); see also Pl.'s Resp. 10 (arguing that plaintiff has "an entitlement to remain on active duty until final disposition of his disability case").  Such a request is foreclosed by Barnick.  Plaintiff's attempt to distinguish Barnick by arguing that the service member in that case was a reservist who had only been on temporary active duty assignments that did not exceed thirty days, see Pl.'s Resp. 9, is unavailing.  Several factors, only one of which included the service member's status, informed the Barnick court's determination that the constructive service doctrine was inapplicable.  See 591 F.3d at 1379.  Indeed, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained that the service member "still would have been medically evaluated, found unfit for duty due to physical disability, and either retired or discharged," and concluded that "[i]n each case applying the constructive service doctrine . . . , the plaintiff was on extended active duty and able to continue on active duty when the improper action leading to his separation from the service occurred.  As such, absent the improper action or discharge, the service member would have remained in the military on active duty."  Id. (emphasis added) (citations omitted).  Here, plaintiff's claim that he could continue to serve on active duty until the "proper completion of his case," Pl.'s Resp. 10, is unsupported in the record, see AR 20, 24 (indicating that plaintiff was "unfit for military service").  Thus, plaintiff would not have remained on active duty.  Because plaintiff seeks reinstatement in order to challenge his assigned disability rating, rather than a determination that he was unfit for service, plaintiff cannot invoke the constructive service doctrine.  See Barnick, 591 F.3d at 1379-80.

In sum, plaintiff does not (1) make the necessary showing to rebut the presumption of voluntary separation, see Carmichael, 293 F.3d at 1372, or (2) demonstrate that the Air Force's purported failure to provide him with a full and fair hearing under 10 U.S.C. § 1214 left him with no choice but to request a transfer to the ISLRS.  Furthermore, the constructive service doctrine is inapplicable because plaintiff seeks reinstatement to active duty solely for the purpose of challenging his disability evaluation.  See Barnick, 591 F.3d at 1379-80.  As a result, plaintiff cannot maintain a claim for back pay pursuant to 37 U.S.C. § 204.  See Metz, 466 F.3d at 998 (requiring an involuntary separation in order for a service member to maintain a claim for back pay pursuant to 37 U.S.C. § 204).  Accordingly, defendant is entitled to judgment upon the administrative record with respect to Count I.

**B. Defendant Is Entitled to Judgment Upon the Administrative Record With Respect to Count II**

In Count II, plaintiff alleges that the Air Force "failed to properly rate" his disability. Compl. ¶ 26. Asserting that the facts of this case "demonstrate[] that he should have been retired at 40%," Pl.'s Resp. & Cross-Mot. J. Administrative R. ("Pl.'s Cross-Mot.") 20, plaintiff argues that the Air Force's decision to separate him was arbitrary, capricious, and contrary to law and regulation, id. at 12-20. Plaintiff raises five arguments in support of his claim: (1) the Air Force applied an erroneous evidentiary standard when it reviewed his case, id. at 12-14; (2) the FPEB failed to rely upon his most recent ROM evaluations, id. at 14-16; (3) the Air Force improperly subjected him to an in-hearing examination, Compl. ¶ 15; (4) the SAFPC violated 10 U.S.C. § 1222 by failing to address issues raised by plaintiff in his rebuttal, id. ¶ 26; Pl.'s Cross-Mot. 17-20; and (5) the Air Force violated 10 U.S.C. § 1214 by depriving him of a full and fair hearing, Compl. ¶ 19. Defendant, however, maintains that the SAFPC's decision was based upon substantial evidence, was not arbitrary or capricious, and was not contrary to law or regulation. Def.'s Mot. J. Administrative R. 9-13; Def.'s Resp. Pl.'s Cross-Mot. & Reply Supp. Def.'s Mot. J. Administrative R. ("Def.'s Reply") 3-9. It also contends that the SAFPC fulfilled its statutory obligation under 10 U.S.C. § 1222 and did not deprive plaintiff of a full and fair hearing under 10 U.S.C. § 1214. Def.'s Reply 9-11.

**1. The SAFPC Applied the Correct Evidentiary Standard**

Plaintiff asserts that "the correct evidentiary standard to be applied in rating disability claims is that 'the preponderance of the evidence must be against the claim for benefits to be denied[;] when a veteran seeks benefits and the evidence is in relative equipoise, the law dictates that veteran prevails.'" Pl.'s Cross-Mot. 13 (alteration added) (quoting Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990)). According to plaintiff, the SAFPC utilized an erroneous standard in which it required that the evidence "show[] he was entitled to a higher disability rating by a preponderance of the evidence." Id. Plaintiff, however, misreads the SAFPC's decision, and the record demonstrates that the SAFPC applied the correct evidentiary standard.

Plaintiff seeks application of what is referred to as the "benefit of the doubt" doctrine, which sets forth the standard of proof applicable to the adjudication of veterans benefits. See Gilbert, 1 Vet. App. at 54. The "benefit of the doubt" doctrine requires that the Secretary of the Air Force "consider all information and lay and medical evidence of record in a case," 38 U.S.C. § 5107(a), and "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant," id. § 5107(b). The regulation implementing section 5107 provides:

It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin,

13

the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102. The Air Force "is required by law to rate a disability using criteria outlined in the [VASRD]." AR 20. The VASRD invokes the standard set forth in 38 C.F.R. § 3.102. See 38 C.F.R. § 4.3 (referencing section 3.102); see also Air Force Instruction ("AFI") 36-3212, Physical Evaluation for Retention, Retirement, and Separation, ¶ 3.23 (Feb. 2, 2006) ("Resolve findings in favor of the member unless the preponderance of the evidence dictates otherwise.").

In Gilbert, the United States Court of Veterans Appeals analogized the "benefit of the doubt" doctrine as a practice similar to "'the tie goes to the runner'" rule that is prevalent in amateur baseball games. 1 Vet. App. at 55. Thus, "[i]f the ball clearly beats the runner, he is out and the rule has no application," id., much like if a "fair preponderance of the evidence is against a veteran's claim, it will be denied and the 'benefit of doubt' rule has no application," id. at 56. In cases where "the runner clearly beats the ball, he is safe and, again, the rule has no application," much like the "benefit of the doubt doctrine" has no application in cases where "the veteran establishes a claim by a fair preponderance of the evidence." Id. Where, however, "the play is close, then the runner is called safe by operation of the rule that 'the tie goes to the runner,'" much like a veteran will prevail "if . . . the play is close, i.e., 'there is an approximate balance of positive and negative evidence' . . . ." Id.

Here, the SAFPC reviewed and discussed the evidence, AR 20-21, and determined that there was no approximate balance of positive and negative evidence related to plaintiff's claim such that he was entitled to a disability rating of forty percent, see 38 U.S.C. § 5107(b); accord 38 C.F.R. § 3.102. The evidence, the SAFPC concluded, "indicate[d] a level of functionality above" what justified a forty percent disability rating. AR 20. Plaintiff's multiple ROM measurements, the SAFPC observed, indicated "a broader effect of daily variation potentially due to intermittent spasm and varied pain that [wa]s common to this condition . . . ." Id. at 21. It also noted that plaintiff's various ROM measurements suggested that plaintiff's condition "was by all accounts stable." Id. The FPEB's observation that plaintiff exhibited a range of motion greater than thirty degrees during his hearing, the SAFPC explained, was only "one element of

14

the board process and its decision" that had "no appearance of being the sole determinant" and was not contrary to a preponderance of the evidence set forth in the record.  Id.

The SAFPC determined that the "moderate disability rating" assigned to plaintiff by the FPEB was supported by a "preponderance of the evidence available in the record."  Id.  As such, it concluded that a preponderance of the evidence was against plaintiff's claim that he was entitled to a forty percent disability rating.  Id. at 20-21.  Because of the lack of "an approximate balance of positive and negative evidence which d[id] not satisfactorily prove or disprove" plaintiff's claim, 38 C.F.R. § 3.102, the "benefit of the doubt" doctrine is not applicable in this case, see Gilbert, 1 Vet. App. at 56.  Plaintiff has not met his burden of overcoming the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith," Sanders, 594 F.2d at 813, and his argument that defendant's interpretation of the SAFPC's decision constitutes a post-hoc realization, Pl.'s Cross-Mot. 13-14, is without merit.[8]

In sum, the Air Force applied the correct evidentiary standard when it determined that plaintiff's "disability picture" warranted a rating of twenty, rather than forty, percent.

### 2. The Air Force Did Not Ignore, Reject, or Unreasonably Construe Evidence

Next, plaintiff argues that the FPEB improperly "rejected" the May 2009 ROM measurements and instead relied solely upon the January 2009 ROM measurements.  Id. at 14. According to plaintiff, "[i]f the PEB credited the May 2009 ROM study, [he] had to be rated at 40%."  Pl.'s Reply Def.'s Resp. Pl.'s Cross-Mot. ("Pl.'s Reply") 3.  Plaintiff also asserts that the FPEB erred by failing to explain why it did "not credit the most recent and probative ROM study."  Id. at 4.

Plaintiff, citing Joslyn v. United States, 90 Fed. Cl. 161, 180 (2009), aff'd in part & vacated in part, 420 F. App'x 974 (Fed. Cir. 2011), for the proposition that he must demonstrate that evidence was ignored or unreasonably construed in order to prevail under the arbitrary and capricious standard, contends that the FPEB ignored his May 2009 ROM measurements.  The May 2009 ROM measurements, plaintiff argues, were  "nearest in time to the . . . formal hearing and . . . therefore more probative of [his] disability . . . ."  Pl.'s Cross-Mot. 15.  Plaintiff is correct that he must show that "personnel involved ignored relevant and competent evidence, that they unreasonably construed the significant body of medical documents before them, or . . . failed to

---

[8]  The United States Supreme Court has described a post-hoc realization as an agency's litigating position that is wholly unsupported by regulations, rulings, or administrative practice. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212 (1988).  Courts do not rely upon post-hoc realizations when reviewing agency action.  Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 155 (1991) (citing Bowen, 488 U.S. at 212).  Here, defendant's recitation of record evidence to show how the SAFPC applied an evidentiary standard does not constitute a post-hoc realization.

discharge their designated duties." Stephens v. United States, 358 F.2d 951, 955 (Ct. Cl. 1966). However, his reliance upon Joslyn for that proposition is misplaced. The Court of Federal Claims dismissed the complaint in Joslyn on jurisdictional grounds, see 90 Fed. Cl. at 176-78, and it only addressed the merits–and granted judgment upon the administrative record in favor of the government–as an alternative holding, id. at 178-85. The Federal Circuit affirmed the court's jurisdictional ruling but vacated judgment upon the administrative record for want of jurisdiction. Joslyn, 420 F. App'x at 974. Therefore, the Joslyn court's merits discussion and analysis are not viable law.

Turning to the substance of plaintiff's claims that the FPEB "ignored" his May 2009 ROM measurements and failed to justify its reliance upon other ROM measurements, the FPEB specifically "note[d] a Physical Therapy clinic note from 27 May 09" and the ROM measurements obtained during that examination. AR 47; see also id. at 51 (indicating that plaintiff's May 2009 ROM measurements averaged twenty degrees). It considered plaintiff's testimony that he self-limited his activities "and stopped his forward flexion[] during the most recent range of motion examination (May 09) when he started to feel pain." Id. at 47. Furthermore, the FPEB cited plaintiff's own testimony that there "ha[d] been no significant change in his spinal condition or acute injury in the past year." Id. As the SAFPC explained, the FPEB considered the record of "multiple measurements over the year after [plaintiff's] fusion procedure, ranging from 20 degrees to 80 degrees of forward flexion." Id. at 20-21. The record therefore indicates that plaintiff's May 2009 ROM measurements were not ignored by the FPEB.

As to plaintiff's argument that the FPEB "rejected" his May 2009 ROM measurements, Pl.'s Cross-Mot. 14, and failed to explain its decision, Pl.'s Reply 4, the record demonstrates otherwise. Contrary to plaintiff's assertion, the FPEB evaluated plaintiff's entire "disability picture," which included five ROM measurements that ranged from twenty to eighty degrees over a span of fifteen months. AR 21, 47. Plaintiff's ROM measurements averaged fifty degrees in February 2008 and April 2008, eighty degrees in July 2008, thirty-seven degrees in January 2009, and twenty degrees in May 2009. Id. at 24, 28, 47, 51. The July 2008 ROM measurements corresponded to a disability rating of ten percent. See 38 C.F.R. § 4.71a. By contrast, the February 2008, April 2008, and January 2009 ROM measurements corresponded to a disability rating of twenty percent, and the May 2009 ROM measurements corresponded to a disability rating of forty percent. See id. The FPEB considered each of these ROM measurements. See AR 47 (rendering a decision "based on the medical evidence, observation, and testimony of the service member"). "Where there is a question as to which of two evaluations shall be applied," the FPEB is required to assign "the higher evaluation . . . if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7. The FPEB, applying the guidance in 38 C.F.R. § 4.7, determined that plaintiff's "disability picture" more nearly approximated a twenty percent rating. AR 47. The SAFPC observed: "In using the most common collection of values over a period that the member's condition was by all accounts stable, the IPEB/FPEB showed good judgment in assigning a moderate disability rating. The purpose of these boards is to evaluate the entire disability picture, and that has been accomplished in this case." Id. at 21.

Plaintiff, however, seizes upon the FPEB's remark that his January 2009 ROM measurements were conducted with a goniometer as evidence that the FPEB ignored or rejected the May 2009 ROM measurements, which he emphasizes were also conducted with a goniometer.  Pl.'s Cross-Mot. 15.  The FPEB's reference to use of a goniometer for one series of ROM measurements, however, does not indicate that the FPEB ignored or rejected plaintiff's remaining ROM measurements.  To the contrary, the FPEB specifically addressed the January 2009 ROM measurements, which had the lowest average of all measurements taken before May 2009, in direct response to plaintiff's contention that his disability rating should be rated at forty percent.  AR 47.  The record does not indicate that the FPEB relied exclusively upon the January 2009 ROM measurements when it formulated plaintiff's "disability picture."

The record instead demonstrates that the FPEB did not find plaintiff's May 2009 ROM measurements as probative as his remaining ROM measurements.  The FPEB noted plaintiff's testimony that he self-limited his activities and did so during his "most recent range of motion examination (May 09) when he started to feel pain."  Id.  Although the May 2009 ROM measurements reflected the lowest average degree angle of all the ROM measurements taken between February 2008 and May 2009, the FPEB cited plaintiff's testimony that "there has been no significant change in his spinal condition or acute injury in the past year."  Id.  Relying upon all of plaintiff's medical evidence, including his testimony and the impressions the FPEB formed of plaintiff's physical ability to participate in his hearing, the FPEB determined that plaintiff's "disability picture" warranted a rating of twenty, not forty, percent.  Id.  The FPEB's determination, the SAFPC concluded, "showed good judgment" because it was formulated based upon "the most common collection of values over a period that [plaintiff's] condition was by all accounts stable . . . ."  Id. at 21.

Finally, the SAFPC rejected plaintiff's contention that the May 2009 ROM measurements should have been the only measurements utilized by the FPEB.  Id.  Sole reliance upon any single measurement, the SAFPC explained, was "contrary to the board's function, as well as to the value and intent of the inclusion in this process of the member's opportunity to appear before a formal board, whose purpose is to evaluate the member's entire disability picture."  Id. (emphasis added); see also 38 C.F.R. § 4.1 ("It is thus essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history.").  Plaintiff cites no statute, regulation, instruction, or other directive requiring the FPEB to rely exclusively upon one evaluation or a most recent evaluation.  Indeed, the SAFPC opined that, had the FPEB relied solely upon plaintiff's July 2008 ROM measurements, plaintiff would have been assigned a disability rating of ten percent.  AR 21.

In sum, the Air Force did not ignore or unreasonably construe evidence when it determined that plaintiff's "disability picture" warranted a rating of twenty, rather than forty, percent.

### 3. The FPEB Did Not Improperly Subject Plaintiff to an In-Hearing Examination

Next, plaintiff claims that the FPEB improperly subjected him to an "in-hearing examination." Pl.'s Cross-Mot. 15. According to plaintiff, the FPEB "should not be able to supplant the MEB's opinion about an evaluee's ROM based on observations when the MEB is required to measure ROM using a goniometer and taking successive measurements." Id. There is no evidence that the FPEB conducted an "examination" of plaintiff during his hearing. Rather, the FPEB observed plaintiff "as he performed the sitting/standing movements inherent in board proceedings." AR 47. Moreover, there is no evidence that the FPEB relied exclusively upon the impressions it formed of plaintiff's physical ability to participate in his hearing. To the contrary, the FPEB indicated that it formed a "disability picture" of plaintiff's back condition "based on the medical evidence, observation, and testimony of the service member . . . ." Id.

The FPEB "may express matters of opinion, so long as they clearly identify them as such." AFI 36-3212, ¶ 3.30. Moreover, the FPEB may generally make statements about "[p]ersonal impressions created by the appearance of the member if such impressions are at variance with documentary evidence in the case file." Id. ¶ 3.30.1. Nothing in the FPEB's decision indicates that the FPEB accorded the weight of a formal examination to its impressions of plaintiff's ability to participate in his hearing. Moreover, nothing in the FPEB's decision indicates that the FPEB "supplant[ed] the MEB's opinion," Pl.'s Cross-Mot. 15, by formulating those impressions. Rather, the FPEB's impressions were one element the FPEB utilized to formulate plaintiff's complete "disability picture." AR 24. The SAFPC explained:

> While it is agreed that . . . other members' observations during the formal board should not be the sole basis for a decision or countering an expert opinion, those observations should not be completely disallowed or ignored, either. It is one element of the board process and its decision, but has no appearance of being the sole determinant, nor is it contrary to the preponderance of the evidence available in the record.

Id. at 21 (emphasis added).

In sum, the Air Force did not improperly subject plaintiff to an in-hearing examination when the FPEB observed, and later discussed, plaintiff's ability to participate in his hearing.

### 4. The SAFPC Fulfilled Its Statutory Obligation Pursuant to 10 U.S.C. § 1222

Plaintiff also alleges that the SAFPC violated its statutory obligation to respond to his request for detailed findings under 10 U.S.C. § 1222. Compl. ¶¶ 17-18. According to plaintiff, the Wounded Warrior Act mandates that all decision documents "address each issue raised by a member." Pl.'s Cross-Mot. 17. The SAFPC, plaintiff argues, failed to respond to his request for detailed findings and did not address all issues he presented to it.

Section 1222(a) provides:

> The Secretary of each military department shall ensure, in the case of any member of the armed forces appearing before a physical evaluation board under that Secretary's supervision, that documents announcing a decision of the board in the case convey the findings and conclusions of the board in an orderly and itemized fashion with specific attention to each issue presented by the member in regard to that member's case.  The requirement under the preceding sentence applies to a case both during initial consideration and upon subsequent consideration due to appeal by the member or other circumstance.

The plain language of the statute, which bears the title "Physical evaluation boards," addresses the substance of a decision issued by a PEB during its "initial consideration" and "subsequent consideration," id., not a decision issued by the SAFPC.  Congress enacted section 1222 in order to reform the PEB process by improving "operations and timeliness and consistency of decisions," and to address "increased complaints from servicemembers, particularly reserve component members, about the consistency and timeliness of physical evaluation board decisions, the ability of members to gain information about physical evaluation board procedures, and the rationale supporting board decisions."  H.R. Rep. No. 109-452, at 329 (2006).

Plaintiff focuses upon the statutory phase "initial consideration and upon subsequent consideration due to appeal" and argues that section 1222 applies to decisions of the SAFPC.  See Pl.'s Reply 9 ("Had Congress wanted to limit the right, it could have simply stated that it applied to the PEB.").  He also reads section 1222 to require the issuance of "detailed findings."  See AR 33 (requesting "detailed findings" pursuant to 10 U.S.C. § 1222).  The plain language of section 1222 indicates that Congress limited the statute's application to "documents announcing a decision of the board," whether during the PEB's "initial consideration" of a case or its "subsequent consideration" after appeal or any "other circumstance" that requires it to revisit a case.  10 U.S.C. § 1222(a).  Nothing in section 1222(a) indicates that decisions of the SAFPC fall within the statute's parameters.  Moreover, nothing in section 1222(a) requires a PEB to issue "detailed findings."  Rather, the statute requires a PEB to issue "findings and conclusions" in an "orderly and itemized fashion with specific attention to each issue presented by the member in regard to that member's case."  Id.

Even assuming, arguendo, that section 1222(a) does apply to the SAFPC's decision, the SAFPC addressed plaintiff's concerns in an orderly fashion, explaining the reasons why the FPEB's disability rating was proper.  AR 20-21.  Plaintiff posed six questions in his "request for detailed findings."  Id. at 33-34.  The SAFPC responded to the first question by explaining its interpretation of AFI 36-3212 and its application to the January 2009 ROM measurements.  Id. at 21.  The SAFPC addressed the next three questions by explaining that impressions and observations obtained during a board proceeding "should not be completely disallowed or ignored" and that those observations were not the sole basis for a decision or for countering an expert opinion.  Id.  The SAFPC addressed plaintiff's remaining questions by explaining how it

interpreted the totality of evidence used to formulate plaintiff's entire "disability picture."  Id.
Plaintiff's disagreement with the SAFPC's explanations does not render its decision insufficient
or contrary to law.

In sum, the Air Force fulfilled its statutory obligation under 10 U.S.C. § 1222 by
conveying findings and conclusions of the PEB in an orderly and itemized fashion.

### 5.  Plaintiff Was Afforded a Full and Fair Hearing

As noted in Part III.A, supra, plaintiff alleges that the Air Force violated 10 U.S.C. § 1214
by depriving him of a full and fair hearing.  According to plaintiff, the SAFPC's purported failure
to respond to each issue he raised in his rebuttal deprived him of a full and fair hearing.  Compl.
¶¶ 16-18.  As explained above, the SAFPC responded to the issues plaintiff raised.  See Part
III.B.4, supra.  Additionally, disagreement with a PEB's disability rating does not equate to the
denial of a full and fair hearing.

Moreover, plaintiff represents that he both demanded a hearing before the FPEB, Compl.
¶ 14, and that he, with counsel, appeared at and participated in the FPEB hearing, id. ¶ 15.  The
administrative record supports plaintiff's representations.  See AR 47 (During the formal hearing,
. . . plaintiff . . . performed the sitting/standing movements inherent in board proceedings."); id.
("[Plaintiff] also testified . . . .").  In Imhoff v. United States, 177 Ct. Cl. 1, 5 (1966), the United
States Court of Claims determined that a service member's "extremely brief" appearance before
a medical board satisfied the requirements of 10 U.S.C. § 1214.  Even the existence of procedural
errors do not deprive a service member of a full and fair hearing under 10 U.S.C. § 1214.  See
Pomory v. United States, 39 Fed. Cl. 213, 217-18 (1997) (determining that the unavailability of a
hearing transcript is harmless and does not deprive a service member of a full and fair hearing).
There is no evidence in the record indicating that plaintiff, who fully participated in proceedings
before the FPEB, was denied a full and fair hearing.

In sum, plaintiff demanded and the Air Force provided him a full and fair hearing
pursuant to 10 U.S.C. § 1214.

### 6.  The SAFPC's Decision Was Based Upon Substantial Evidence and Was Not Arbitrary or Capricious

Finally, the SAFPC's decision was based upon a review of all of the facts and evidence
presented in plaintiff's case, including testimony presented before the FPEB, remarks by the
FPEB and IPEB, plaintiff's medical record, and the MEB's narrative summary.  AR 20.  As part
of their consideration of plaintiff's case, both the FPEB and SAFPC addressed plaintiff's loss of
function due to pain.  See 38 C.F.R. § 4.71a (setting forth the general rating formula for spinal
injuries "[w]ith or without symptoms such as pain (whether or not it radiates), stiffness, or aching
in the area of the spine affected by residuals of injury").  The IPEB's May 2009 request for
additional documentation and an examination specifically stated that "[a]ll ROM measurements

should reflect the ROM as <u>limited by pain, not when pain starts</u>." AR 72.  The FPEB determined that the May 2009 ROM measurements should be accorded less weight than other ROM measurements because plaintiff "self-limit[ed] his activities to avoid aggravating his pain and stopped his forward flexion[] during most recent range of motion examination (May 09) <u>when he started to feel pain</u>." <u>Id.</u> at 47 (emphasis added).  Although the SAFPC acknowledged that plaintiff "occasionally [had] greater spasm and pain in the back and buttocks," it noted that no significant events changed his condition over the course of a year and his "reduced need for pain medications" indicated a "level of functionality above that being contended for."  <u>Id.</u> at 20.

Although plaintiff asserts that "[j]ust about everything possible that could have gone wrong went wrong in this case," Pl.'s Cross-Mot. 20, the court does not sit as a "super correction board," <u>Skinner</u>, 594 F.2d at 830.  As explained above, the SAFPC applied the correct evidentiary standard, the FPEB and SAFPC did not ignore or unreasonably construe plaintiff's May 2009 ROM measurements, the FPEB properly considered impressions of plaintiff's ability to participate in his hearing to formulate a complete "disability picture," the SAFPC addressed the issues plaintiff raised in his rebuttal, and the Air Force provided plaintiff with a full and fair hearing.  The record therefore demonstrates that the SAFPC's decision concurring with the FPEB's assignment of a twenty percent disability rating is supported by substantial evidence and is not arbitrary, capricious, or contrary to law.  <u>See Porter</u>, 163 F.3d at 1312.  Accordingly, defendant is entitled to judgment upon the administrative record with respect to Count II.

### IV.  CONCLUSION

For the reasons set forth above, defendant's motion for partial dismissal, which the court treats as a motion for judgment upon the administrative record, is **GRANTED**; defendant's motion for judgment upon the administrative record is **GRANTED**; and plaintiff's cross-motion for judgment upon the administrative record is **DENIED**.  The clerk is directed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge